# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ACCOUNTABILITY FBI, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 22-3793 (RMM) |
| ) | |
| U.S. DEPARTMENT OF JUSTICE, ) | |
| ) | |
| Defendant. ) | |

## REPLY MEMORANDUM IN SUPPORT OF
## PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

Page(s)

TABLE OF CONTENTS………………………………………………………………………….i

TABLE OF AUTHORITIES……………………………………………………………………..iii

ARGUMENT……………………………………………………………………………………...1

   I.    WITH A LIST OF FBI SES PERSONNEL DURING A LIMITED, RELEVANT PERIOD, THE FBI CAN IDENTIFY THE REQUESTED RECORDS THROUGH ITS CENTRAL RECORDS SYSTEM WITH A REASONABLE AMOUNT OF EFFORT……….…………………………………….....2

       A.    DOJ Admits That It Can Obtain a List of FBI SES Personnel During the Relevant Period of the Request……………………………………...….2

            1.    FOIA Does Not Require a Perfect Search; the Database Search Could Be Made with a List of FBI SES Personnel During a Period One Year Longer Than the Period of Requested Records…………………...3

            2.    Mr. Seidel's Claimed Concern About Open Versus Opened Files Is Contradicted by FBI OPR's Ability to Identify a Universe of Possible Files During the Requested Period, and Mr. Seidel's Credibility Is Questionable……………………………………………..4

            3.    DOJ's Reliance on Its Sudden Concern About Open Versus Opened Files Is Contrary to Established Precedent…………………………….6

       B.    With a List of SES Personnel During the Relevant Period, FBI FOIA Personnel Can Identify the Requested Files Through a CRS Search………………..7

       C.    FBI OPR Personnel Can Reasonably Confirm the Responsiveness of Files and Identify the Responsive Documents in Them…………………………………8

       D.    DOJ's Claim That a Page-By-Page Review of All Documents in All Disciplinary Files During the Requested Period Would Still Be Necessary After a Database Search Is Without Basis, and Contradicted by Undisputed Facts and DOJ's Own Sole Witness…………………………………………….9

   II.    A MANUAL SEARCH FOR THE REQUESTED RECORDS WOULD NOT REQUIRE REVIEWING EVERY PAGE OF EVERY DISCIPLINARY FILE DURING THE REQUESTED PERIOD; IT COULD BE COMPLETED BY REVIEWING OPENING DOCUMENTATION AND CHANGED TITLE DOCUMENTS………………………………………………………..……..10

CONCLUSION……………………………………………………………………………..…12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)………………………………..…….2

*Nation Magazine, Washington Bureau v. U.S. Customs Service*,
    71 F.3d 885 (D.C. Cir. 1995)……………………………………………………………6

*People for Am. Way Found. v. U.S. Dep't of Justice*,
    451 F. Supp. 2d 6 (D.D.C. 2006)………………………………………………2 n.2, 6

*Stern v. FBI*, 737 F.2d 84 (D.C. Cir. 1984)……………………………………………...5-6

*Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476 (D.C. Cir. 1984)…………………………..4

**Rules**

U.S. District Court for the District of Columbia Local Rule 7(h)……………………………1

## ARGUMENT

The undisputed facts and Defendant U.S. Department of Justice's ("DOJ") own witness's declarations confirm that there are two reasonable methods to search for the Federal Bureau of Investigation's ("FBI") disciplinary records of its Senior Executive Service ("SES") personnel: 1) by obtaining a list of SES personnel during a reasonable period and searching those names through the FBI's Central Records System ("CRS") for the existence of a disciplinary file ("database search"), or 2) a manual review of the paper disciplinary files during the requested period for opening documents and changed title documents to determine if an SES employee was the subject of the disciplinary matter ("manual search"). Neither method would be unduly burdensome. Neither method would require 23,333 hours of employee time, as DOJ claims.

As an initial matter, DOJ does not dispute the facts asserted by the Plaintiff necessary for this Court to decide this motion. Of the forty-four material facts asserted by the Plaintiff, DOJ did not dispute forty-three of them. It only disputed part of Material Fact No. 31 (whether FBI files with the 262-classification number were related to misconduct allegations) and that assertion is not necessary to decide this motion. ECF Doc. 21-1 at 12.[1] Regarding the other forty-three material facts, DOJ specifically responded that it did not dispute Material Fact Nos. 1-15, 26, part of 31, 32-33, 35, 37-38, and 40. ECF Doc. 21-1. DOJ did not indicate whether it disputed the truth of Material Fact Nos. 16-25, 27-29, 34, 36, 39, and 41-44. *Id.* DOJ argued that Material Fact No. 30 (the existence of FBI disciplinary entity control files) was "[u]nsupported by facts in the record," but did not dispute it. *Id.* at 11-12. Under Local Rule 7(h)(1), "[i]n determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its statement of material facts are admitted,

---

[1] All ECF document page numbers refer to PDF pages.

unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." Since DOJ has not controverted the Plaintiff's Material Fact Nos. 16-25, 27-30, 34, 36, 39, and 41-44, this Court may assume those material facts are admitted.

DOJ does dispute the materiality of the Plaintiff's material facts, though. *See* ECF Doc. 21-1. However, materiality is a legal question. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[T]he substantive law will identify which facts are material.") The Plaintiff's undisputed facts are material because they confirm that the Plaintiff's Freedom of Information Act ("FOIA") request reasonably described the records it sought so that DOJ could find them without conducting an unduly burdensome search. The admitted material facts as well as DOJ's sole witness's declarations show that DOJ's insistence that both search methods would require a page-by-page search of all documents in all disciplinary files during the requested period is without basis.

Also, because the FBI has provided additional information regarding its records and databases, the Plaintiff withdraws its alternative request for discovery. The undisputed facts are sufficient for this Court to decide that the Plaintiff reasonably described the requested records and the FBI's search for responsive records is not unduly burdensome.

I. **WITH A LIST OF FBI SES PERSONNEL DURING A LIMITED, RELEVANT PERIOD, THE FBI CAN IDENTIFY THE REQUESTED RECORDS THROUGH ITS CENTRAL RECORDS SYSTEM WITH A REASONABLE AMOUNT OF EFFORT.**

A. **DOJ Admits That It Can Obtain a List of FBI SES Personnel During the Relevant Period of the Request**.

According to DOJ's only witness, Michael Seidel, the FBI's Human Resources Division ("HRD") can create a list of SES personnel for a period of time.[2] Second Declaration of Michael G.

---

[2] While Mr. Seidel does not describe how the list of SES personnel would be created, as the Plaintiff discussed in its cross-motion for summary judgment, ECF Doc. 17-1 at 13-14, this Court has held that "'[e]lectronic database searches are…not regarded as involving the creation of new records.'"

2

Seidel ("2d Seidel Decl.") ¶ 7. The difficulty, according to Mr. Seidel, is that because the Plaintiff asked for files *open* during a requested period as opposed to files that were *opened* during a requested period, the FBI could not figure out what time period was needed to create a list of SES personnel. *Id.* ¶¶ 5, 7. Mr. Seidel claims that an employee conducting the search would first have to review the open and close dates of all FBI Office of Professional Responsibility ("OPR"), Inspection Division, and disciplinary files ("263 files"). *Id.* ¶ 5. Mr. Seidel bases this claim on the fact that an SES employee "may have been SES at the time of allegation, but might not have been after January 1, 2015 [the initial date of the period of requested records] if he were removed or resigned his SES position before January 1, 2015 and the investigation was still in open status after January 1, 2015." *Id.* ¶ 7 n.2.

However, the issues raised by Mr. Seidel do not make a database search for the requested records unduly burdensome. Also, there are reasonable means to address these issues that require substantially less work than Mr. Seidel claims.

> **1. FOIA Does Not Require a Perfect Search; the Database Search Could Be Made with a List of FBI SES Personnel During a Period One Year Longer Than the Period of Requested Records.**

Although Mr. Seidel's concern for absolute accuracy is laudable, it is not required by FOIA. The D.C. Circuit has observed that in determining whether an agency "has conducted a 'search reasonably calculated to uncover all relevant documents'" that "the issue to be resolved is not

---

*People for Am. Way Found. v. U.S. Dep't of Justice*, 451 F. Supp. 2d 6, 14 (D.D.C. 2006). In *People for Am. Way*, this Court required DOJ to use PACER, which is not even DOJ's own database, to identify "pre-existing agency records that are indisputably within [DOJ's] control and are responsive to [a] FOIA request—PACER is simply a tool to aid in identifying responsive records from defendant's database of case files." *Id.* at 15. Whatever tools HRD used to identify SES personnel would also simply be an aid in identifying responsive records.

3

whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate. The adequacy of the search…is judged by a standard of reasonableness and depends…upon the facts of each case. *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (citations omitted). The FBI does not have to be perfect in its search and find out if some SES member who was the subject of a 263 file resigned or was removed before January 1, 2015, while the case remained open in the FBI's system. The Plaintiff is willing to agree that a one-year period is reasonable to account for such a circumstance. In other words, a list of FBI personnel who were SES members between January 1, 2014, and December 31, 2021[3], as opposed to the period between January 1, 2015, and December 31, 2021, would be adequate to capture records responsive to the Plaintiff's request. With this change, an overinclusive list of SES personnel, the risk of an underinclusive CRS search would be mitigated, and there is no need for an analysis of all FBI OPR files as DOJ claims. ECF Doc. 21 at 6-7

> **2.    Mr. Seidel's Claimed Concern About Open Versus Opened Files Is Contradicted by FBI OPR's Ability to Identify a Universe of Possible Files During the Requested Period, and Mr. Seidel's Credibility Is Questionable.**

While the Plaintiff appreciates Mr. Seidel's concern for absolute accuracy, it questions his sincerity. Although DOJ made a reference to the issue of open versus opened files in its summary judgment motion, ECF Doc. 15-1 at 11 n.1, it and its witness only press this matter now that their claims about the burden of a manual search and the inability to create a list of FBI SES personnel has been proven false.

First, Mr. Seidel's claim about the difficulty of identifying open versus opened files is contradicted by FBI OPR's ability to identify those files during the requested period. If FBI OPR

---

[3] For the purposes of this reply, the Plaintiff will refer to this as the "relevant period" as opposed to the "requested period." The relevant period is one year longer.

were previously able to find the "universe of 263 investigation files *within the specified period of the request*," First Declaration of Michael G. Seidel ("1st Seidel Decl.) ¶ 21 (emphasis added), it is difficult to understand why the issue makes the search for records unduly burdensome now.

Second, Mr. Seidel's credibility is damaged by his false claims about negotiations between the parties. He falsely claims in his second sworn declaration that the

> FBI, via Counsel, has attempted to negotiate with Plaintiff to reframe his request, without success. The FBI has determined several ways that Plaintiff could increase the FBI's ability to locate responsive records with a reasonable amount of effort. Plaintiff could rephrase the time frame from 'open between' to 'open*ed* between'; limit his request to investigations rather than 'including 263 files, adjudication files, and investigative files, regarding allegations of misconduct against FBI [SES] officials'….

2d Seidel Decl. ¶ 32 (emphasis in original). This claim in Mr. Seidel's second sworn statement is contradicted by the exhibits to his first declaration. Those exhibits show that DOJ did not raise this issue about open versus opened files during its negotiations, nor did it raise the issue of limiting the Plaintiff's request to investigations. *See* ECF Doc. 15-3 at 34-40. The only alternative the FBI offered was that the Plaintiff had to provide a list of the FBI's own SES personnel to the FBI. *Id.* at 36.

Contrary to Mr. Seidel's claims in his second declaration, the Plaintiff attempted to cooperate with the FBI by reducing the number of documents requested. *Id.* at 34. In fact, Mr. Seidel acknowledged that in his first declaration. 1st Seidel Decl. ¶ 17. The Plaintiff agreed to reduce the scope of the request to initial reports, final results of investigations, FBI OPR's conclusions, and the final disposition for each matter. ECF Doc. 15-3 at 34.

Oddly, in his second declaration, Mr. Seidel continues to raise the privacy of the accused or investigated SES personnel as a basis to deny the Plaintiff's request. 2d Seidel Decl. ¶¶ 9, 10, 32. However, even though the privacy concerns of SES personnel is lessened and the public interest in disclosing substantiated misconduct by high-ranking government officials would outweigh them, *see*

5

*Stern v. FBI*, 737 F.2d 84, 93-94 (D.C. Cir. 1984), the Plaintiff agreed during negotiations that the FBI could redact the names of non-SES personnel and redact the names of SES personnel as long as the FBI marked the SES personnel with a unique identifier, such as "SES 1", "SES 2", etc. so it could track which documents pertained to which SES official. This compromise is documented in the exhibits to Mr. Seidel's first declaration. ECF Doc. 15-3 at 34. Mr. Seidel's continued reference to the privacy issue after the Plaintiff has agreed to the FBI redacting their identifying information, along with his other false claims, indicate that he is not credible when raising claims about the burden on the FBI to conduct a search.

        **3.**    **DOJ's Reliance on Its Sudden Concern About Open Versus Opened Files Is Contrary to Established Precedent.**

A FOIA request is to be construed liberally. *Nation Magazine, Washington Bureau v. U.S. Customs Service*, 71 F.3d 885, 890 (D.C. Cir. 1995). If the omission of two letters in a request, failing to add "ed" to the word "open," made a search unduly burdensome, DOJ had a duty to construe the request so the search could be conducted or, at least, notify the requester.

Still, despite DOJ not raising this issue until its opposition/reply—since it only briefly referenced it in a footnote in its motion for summary judgment—if this Court believes the proposed list of FBI SES personnel for one year longer than the period of the requested records is unreasonable, the Plaintiff will agree to the FBI searching for files open*ed* during the requested period.

Since FBI HRD can create a list of SES personnel during a period that is reasonably likely to identify the requested records, there is no need to address the databases and SES reports the Plaintiff raised in its cross-motion for summary judgment. (The Plaintiff's purpose in raising them was simply to show that the FBI has the means to identify its own SES personnel.) Since the FBI can identify its SES personnel, under this Court's precedent, it can use the tools it has as an aid to identify responsive records in the CRS database. *People for Am. Way*, 451 F. Supp. 2d at 15.

### B. With a List of SES Personnel During the Relevant Period, FBI FOIA Personnel Can Identify the Requested Files Through a CRS Search.

With a list of FBI SES personnel from January 1, 2014, through December 31, 2021, FBI FOIA personnel can conduct a reasonable search for responsive files by searching the CRS for 263 files with the SES members' names. The Plaintiff does not dispute that there are no electronic versions of 263 files that can be viewed electronically. However, as Mr. Seidel has declared, an FBI employee can search a name through the CRS and "the results would at least indicate the existence of a 263 file….It would also indicate if the individual was a main subject or a reference in the file." 2d Seidel Decl. ¶ 15. This admission is consistent with Material Fact Nos. 15-19 that DOJ does not dispute. ECF Doc. 21-1 at 7-8. The indication of whether an SES official was a main subject or a reference is key to the search, because the Plaintiff has only requested records where the SES official was a main subject of a disciplinary file. The FBI can exclude all files where the SES official was listed as a reference.

DOJ's discussion of the electronic availability of case opening documents in a database search is irrelevant. ECF Doc. 21 at 10-12. In fact, the Plaintiff only raised the issue of case titles, opening documents, and changed title documents in the context of a manual search. ECF Doc. 17-1 at 24-27. Because the subjects of 263 files are indexed, there is no need to review file documents to determine if an individual is a subject and, thus, possibly responsive to the FOIA request.

By conducting a CRS search for names of personnel who were SES during the relevant period provided by HRD, FBI FOIA personnel can identify possible relevant files.

### C. FBI OPR Personnel Can Reasonably Confirm the Responsiveness of Files and Identify the Responsive Documents in Them.

Although FBI FOIA personnel have no access to the 263 files, FBI OPR personnel do. 1st Seidel Decl. ¶ 21, 2d Seidel Decl. ¶ 15.[4] FBI OPR personnel can confirm the identified files are relevant and identify the specific responsive records from those files. Nothing in FOIA prevents different parts of an agency from having to coordinate on a FOIA request. If such coordination were unduly burdensome, the FBI could simply have FBI OPR conduct the search with the HRD list. Nothing in FOIA exempts FBI OPR personnel from conducting a search if they are the only officials authorized to access files responsive to a FOIA request. In fact, DOJ has not claimed that FBI OPR personnel are exempt from conducting FOIA searches, especially considering DOJ raised the issue of FBI OPR personnel conducting a manual search in its motion for summary judgment. ECF Doc. 15-1 at 11-12.

Once FOIA personnel have identified possible files through a CRS search, FBI OPR personnel with access to the files themselves can confirm that the files were open during the requested period. Those same employees can also confirm that the subject of the file was SES to be sure the records are responsive. Although DOJ styles this as conducting research to suggest that it is not required under FOIA, ECF Doc. 21 at 7, such confirmation that records are responsive is typical of any FOIA search and not unduly burdensome. Finally, as described above, the Plaintiff has narrowed the requested documents to four basic types of records showing allegations and the results of investigations and disciplinary processes. FBI OPR personnel can identify those specific documents in the files to identify all responsive records.

---

[4] Presumably, FBI Inspection Division personnel have access to 263 files as well, 2d Seidel Decl. ¶ 15, but, for simplicity's sake, the Plaintiff will only refer to FBI OPR personnel.

### D. DOJ's Claim That a Page-By-Page Review of All Documents in All Disciplinary Files During the Requested Period Would Still Be Necessary After a Database Search Is Without Basis and Contradicted by Undisputed Facts and DOJ's Own Sole Witness.

Oddly, in its opposition, although it acknowledges that a list of SES personnel compiled by HRD could be used to narrow the list of responsive files, DOJ maintains the faulty claim from its original motion for summary judgment that a manual page-by-page review of all disciplinary files during the requested period would have to be conducted requiring 23,333 employee hours. ECF Doc. 21 at 7. There is no basis for DOJ to make this claim.

DOJ does not dispute the Plaintiff's material fact that approximately 6.7% of disciplinary files in the FBI's Office of Disciplinary Appeals report provided by U.S. Senator Charles Grassley involved SES employees. Material Fact Nos. 41-43, ECF Doc. 21-1 at 16-18. Thus, a similar percentage of the 1400 263 files and 4600 complaints during the requested period, 1st Seidel Decl. ¶ 21, would likely involve SES personnel.

Since the CRS search described above would identify the 263 files where SES personnel were the main subjects, only those files would need to be reviewed. That review would only be needed to confirm that the identified file involved an SES official and was open during the requested period. There would be no need for a page-by-page review.

In its response to the Plaintiff's Statement of Material Issues, DOJ repeatedly claims that the Plaintiff's request is "unduly burdensome because the only manner in which the FBI can *reliably* identify all records responsive to Plaintiff's FOIA request, as currently written, requires an estimated 23,333 hours of employee time just to determine responsiveness." Material Fact Nos. 1-32, 34-39, 41-44, ECF Doc. 21-1 (emphasis added). DOJ apparently relies on the qualifier "reliably" to justify its position that, regardless of the undisputed facts that HRD can provide a reasonable list of SES personnel and a CRS search of those names will identify if those officials have been the main subject

9

of a 263 file, such a search is not "reliable" and a manual search of every page of every disciplinary file is necessary. DOJ's argument is much like Mr. Seidel's claim that the possibility that an FBI SES official may have been removed or resigned before the period of the requested records, but the file remained open, destroys any possibility of finding the requested records without an unduly burdensome search. The FBI and DOJ are not merely making the perfect the enemy of the good. Here, they are insisting on conducting an unreasonable, unduly burdensome search to avoid releasing documents showing misconduct by FBI senior executives.

II. **A MANUAL SEARCH FOR THE REQUESTED RECORDS WOULD NOT REQUIRE REVIEWING EVERY PAGE OF EVERY DISCIPLINARY FILE DURING THE REQUESTED PERIOD; IT COULD BE COMPLETED BY REVIEWING OPENING DOCUMENTATION AND CHANGED TITLE DOCUMENTS.**

As an alternative to the database search, a manual search for the requested records would not be unduly burdensome, because the employee(s) conducting the search, presumably from FBI OPR[5], would only have to review case opening documents and changed title documents to identify responsive records. DOJ does not dispute that case titles in an opening document include the subject's name and typically the public position of that official. Material Fact No. 11, ECF Doc. 21-1 at 5. DOJ does not dispute that the identifying information and public position, if any, of the subject of a new investigation is further described in the body of the opening document. Material Fact No. 12, ECF Doc. 21-1 at 6. DOJ does not dispute that if there are multiple subjects of an investigation at the time a case is opened, they are all listed in the title and body of the opening document. Material Fact No. 13, ECF Doc. 21-1 at 6. DOJ does not dispute that if additional subjects are identified later in an investigation, a changed title document is submitted reflecting the new subject's identifying

---

[5] As discussed in Section I.C. above, there is nothing preventing FBI OPR personnel from conducting a search in response to a FOIA request.

information in the title and body of that document. Material Fact No. 14, ECF Doc. 21-1 at 6. Also, in response to the Plaintiff's statement that the opening documents of case files include descriptive information about the subjects, Mr. Seidel stated, "[t]he file document may be as Plaintiff describes…." 2d Seidel Decl. ¶ 17.[6]

DOJ attempts to obscure the issue by claiming in its response to the Plaintiff's Statement of Material Issues, Material Fact No. 11, that "the appearance of a name in the opening document is not relevant to whether the name of an SES employee during the relevant timeframe otherwise appears in the contents of the investigative file and thus does not alleviate the burden of searching the entire document." ECF Doc. 21-1 at 5. What is actually irrelevant to the question before this Court is whether an SES official's name "otherwise appears in the contents of the investigative file," because the Plaintiff only asked for records where an SES official was accused of wrongdoing, in other words, the *subject* of such an investigation or complaint. There is no reason to review files where an SES individual was a witness, complainant, or otherwise mentioned in an investigation. DOJ's statement in response to Material Fact No. 11 that it is not alleviated of its "burden of searching the entire document," apparently referring to the investigative file, is false.

Since DOJ does not dispute that subjects of investigations and their positions are listed in the title of a case in the opening document, Material Fact No. 11, in the body of the opening document, Material Fact. No. 12, even when there are multiple subjects, Material Fact No. 13, and, if new

---

[6] Although Mr. Seidel explains that the title of an FBI OPR file is the file number, his statement is in the context of the results of CRS database searches, not the manual search of opening documents in paper files. 2d Seidel Decl. ¶ 17. He appears to be trying to create a dispute with the Plaintiff's assertion referring to a manual search of paper files in its cross-motion that the subjects of 263 files are named in the case title and elsewhere in opening documents. ECF Doc. 17-1 at 24. In fact, Mr. Seidel acknowledges that the subject's name of those cases is listed in the "name" data field of electronic searches, anyway. 2d Seidel Decl. ¶ 17. Thus, it does not contradict the Plaintiff's asserted facts that DOJ has not disputed and are listed here.

11

subjects are later identified during the course of an investigation, in changed title documents, Material Fact No. 14, the FBI only needs to review these documents in the 1400 files identified by FBI OPR to determine if they are responsive. So, a manual review of files and complaints would require the Plaintiff's approximation of 247 hours of employee time described in its cross-motion for summary judgment. ECF Doc. 17-1 at 25-26. In fact, the Plaintiff overestimated the search time in its cross-motion, because it misread Mr. Seidel's estimate as there being 6000 complaints. Since there are approximately 1400 files and 4600 complaints, 2d Seidel Decl. ¶ 18, the total employee hours for the full review would be about 200 hours. Such a search is not unduly burdensome.

## CONCLUSION

Because DOJ does not dispute that the FBI can create a list of its own SES personnel, it is not unduly burdensome for the FBI to identify the requested records through a CRS search and further review by FBI OPR personnel. Alternatively, since DOJ does not dispute that the subjects of misconduct investigations and their positions are listed in opening documents and changed title documents, a manual review of these documents within the universe of possible files to identify responsive records is not unduly burdensome. This Court should grant the Plaintiff's motion and order DOJ to search for the requested records and release any non-exempt information.

Dated: May 23, 2024                                              Respectfully Submitted,

*/s/ Michael S. Zummer*
Michael S. Zummer (La. Bar No. 31375)
2337 Magazine St. Unit D
New Orleans, LA 70130
Telephone: (504) 717-5913
E-mail: afbilitigation@gmail.com
*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ACOUNTABILITY FBI, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>U.S. DEPARTMENT OF JUSTICE, )<br>)<br>Defendant. )<br>) | Civil Action No. 22-3793 (RMM) |

**CERTIFICATE OF SERVICE**

I hereby certify that, on May 23, 2024, I electronically filed with the Clerk of Court for the U.S. District Court for the District of Columbia, using this Court's CM/ECF system, Plaintiff's Reply Memorandum in Support of Plaintiff's Cross-Motion for Summary Judgment. This Court's CM/ECF system sent notification of such filing to all counsel of record in this case.

May 23, 2024                                                                 Respectfully Submitted,


*/s/ Michael S. Zummer*
Michael S. Zummer (La. Bar No. 31375)
2337 Magazine St. Unit D
New Orleans, LA 70130
Telephone: (504) 717-5913
E-mail: afbilitigation@gmail.com
*Counsel for Plaintiff*

13